# In the United States Court of Federal Claims

No. 12-481
(Filed: June 30, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \* |
| | \* |
| **MATTHEW WALTER STEPHAN,** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

This action was brought on July 30, 2012, by Plaintiff, Matthew Walter Stephan ("Stephan"), *pro se*, requesting a Living Quarters Allowance ("LQA") and back pay for his time spent as a Navy civilian employee in Yokosuka, Japan.  The case is now before the Court on cross-motions for summary judgment.  After considering the parties' arguments and the evidence presented therewith, the Court has concluded that Stephan's motion should be DENIED and the Government's motion should be GRANTED.

### I.      Background

#### a.  Statutory and Regulatory Background

The Overseas Differentials and Allowances Act of 1960 ("ODAA") establishes, *inter alia*, the statutory authority for Federal agencies to provide LQAs to employees serving overseas.  *See* 5 U.S.C. § 5921 *et seq.*  The ODAA states in relevant part:

> (a)  When Government owned or rented quarters are not provided
>       without charge for an employee in a foreign area, one or more of
>       the following allowances may be granted when applicable:
>                                    …
>       (2)  A living quarters allowance for rent, heat, light, fuel, gas,
>            electricity, and water…

5. U.S.C. §5923(a)(2).  Such allowances "shall be paid under regulations prescribed by the President."  § 5922(c).  The ODAA also authorizes the President to promulgate regulations governing "(1) payments of the allowance and differentials and the respective rates at which the payments are made; (2) the foreign areas, the groups of positions, and

the categories of employees to which the rates apply; and (3) other related matters." *Id.* The President, in turn, has delegated his authority to the Secretary of State. Exec. Order 10903, 26 Fed. Reg. 217 (Jan. 9, 1961).

Pursuant to the President's delegation, the Secretary of State promulgated the Department of State Standardized Regulations ("DSSR"). Mirroring the language of the statute, the DSSR provides that the "[q]uarters allowances … may be granted to employees recruited outside the United States" if those employees meet certain conditions. DSSR § 031.12. As applied to Stephan, in order to qualify for LQA, the DSSR requires that "prior to employment [with the United States], the employee was recruited in the United States … by the United States Government, including its Armed Forces[ or] a United States firm, organization, or interest … and had been in substantially continuous employment by such employer *under conditions which provided for his/her return transportation to the United States*[.]" *Id.* at § 031.12(b) (emphasis added). The italicized language is the key to this case.

### b. Facts

Stephan was recruited by Computer Sciences Corporation ("CSC"), a United States firm, while he was living and working in the United States. CSC offered Stephan employment in Japan at the Yokosuka Naval Base. On July 23, 2008, Stephan accepted the offer by signing an offer of employment. Stephan traveled to Japan to begin his employment on August 3, 2008. Stephan remained under the employ of CSC through March 28, 2010. During his entire tenure with CSC, Stephan was employed in Yokosuka, Japan.

Stephan's employment with CSC ended when the Navy decided to cut his position from its contract with CSC and instead decided to hire a civil servant to perform his duties. The Navy posted a first job announcement, for which Stephan applied. He received a tentative job offer ("TJO") on January 13, 2010. He accepted the job offer the following day, and submitted information pertaining to his eligibility for LQA. Stephan was informed on February 16, 2010, that he was found eligible for LQA.

Although it is unclear from the record precisely what occurred, the Navy discovered an "issue" with the original vacancy announcement. Therefore, on February 10, 2010—six days prior to informing Stephan of his eligibility for LQA on the first job posting—the Navy posted another announcement, to which Stephan also applied. Also on February 16, 2010, the Navy extended Stephan a second TJO, which he accepted.

The Navy's internal communications indicated that Stephan was *not* found eligible for LQA on this second TJO. So, on March 17, 2010, the office of Naval Computer & Telecommunications Station Far East ("NCTS-FE"), Stephan's employing office, submitted an LQA waiver request to the Navy's human resources office requesting that 35 people be given LQAs.[1] This "blanket" waiver request was denied, but

---

[1] Only 28 names appear on the list, despite reference to 35 people.

Stephan was informed that an individual LQA waiver package would be submitted for him.

On March 25, 2010, the Navy extended a final offer of employment to Stephan, wherein it informed him that he was found ineligible for LQA. Despite his questions about his ineligibility, Stephan accepted the offer and began employment with the Navy on March 29, 2010. Stephan remained in Yokosuka, Japan, and he remains employed there as of the writing of this Opinion.

### c. Procedural History

As stated above, Stephan filed his Complaint in this matter on July 30, 2012. On October 12, 2012, the Government filed its Answer. However, during the preliminary scheduling conference, the Government informed the Court that it intended to file a motion to dismiss, challenging this Court's jurisdiction. The Government filed its motion to dismiss on March 1, 2013.

Stephan filed his response to the motion on March 31, 2013. As part of his responsive brief, Stephan filed a motion for summary judgment against the Government. The Court stayed the parties' briefing on, and its own consideration of, Stephan's motion for summary judgment pending resolution of the jurisdictional dispute. On July 17, 2013, the Court denied the Government's motion to dismiss and ordered the parties to submit a status report providing the Court with their proposal for future proceedings.

The Government sought relatively limited discovery before filing its cross-motion for summary judgment and response to Stephan's motion. The Court provided the parties time to take discovery, with a discovery deadline of February 4, 2014. Otherwise, the Court adopted the schedule proposed by the Government. After discovery closed, briefing on summary judgment re-opened. That briefing was completed on March 19, 2014, and is now before the Court for consideration.

### II.    Legal Standard

The Rules of the Court of Federal Claims ("RCFC") provide that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is only "material" if it might "affect the outcome of the suit under the governing law." *Id.*

### III.     Discussion

In short, Stephan is a Government employee who was recruited by the Government while living outside the United States.  As described above, *see supra* Part I(a), the regulation relevant to LQA entitlement in such a situation provides that such an employee is entitled to LQA if he meets three conditions:

    (1) the employee was first recruited while living in the United States;
    (2) by the United States or a United States firm; and
    (3) he had been in substantially continuous employment by the previous employer "under conditions which provided for his/her return transportation to the United States."

DSSR § 031.12(b).  There is no dispute that Stephan was first recruited by CSC while living in the United States, nor is it disputed that CSC is a United States firm.  The only dispute in this case is whether Stephan's employment with CSC was "under conditions which provided for his[] return transportation to the United States."

As the Court reads Stephan's briefs, there are essentially two pieces of evidence upon which Stephan relies to satisfy this condition.  The first is a letter written by CSC after his employment with the firm had ended.  The second is the United States-Japan Status of Forces Agreement ("SOFA"), which was executed under Article VI of the Treaty of Mutual Cooperation and Security: Facilities and Areas and the Status of United States Armed Forces in Japan, U.S. – Japan, Jan. 19, 1960, 11 U.S.T. 1652, 1960 WL 57244.[2]  The Court addresses these two subjects separately.

### a.  The September 13, 2010 Letter

A letter dated September 13, 2010, and signed by Keith Paulson, a CSC official, seems at first glance to support Stephan's case.  The entirety of the substance of the letter reads:

> In regards [sic] to former CSC employees, CSC would like to confirm that for the personnel that were hired originally in the [S]tates or those that possessed a valid transportation agreement at the time of hire that CSC would provide for return airline ticket.  This ticket would be to tax home of record in the USA for personnel as required by applicable SOFA regulations.  This applies to employee only and would not cover spouse or any other dependants [sic].
>
> If you have any questions, please contact me.

Pltf. App. at 138.

---

[2] This treaty is part of the Government's Appendix.  *See* Def. App. At 113-145.

This letter is interesting for several reasons. The first reason is its reliance upon the SOFA, which will be discussed below. *See infra*. Second, it is contradictory on its face to several previous statements from CSC. Kevin McAllister, a CSC manager, stated by letter dated February 18, 2010, that Stephan was entitled to a LQA, Cost of Living Allowance ("COLA") and travel *to* the worksite. Def. App. 201. The letter was silent on return transportation. An email, drafted by a Navy employee on March 17, 2010, also states that CSC had not agreed to provide Stephan with return transportation: "We met with NCTS Command and the Contractor [CSC] yesterday. During the meeting [CSC] verified that it was never their intent to pay for return transportation." Def. App. 221. Another email, from Keith Paulson (the man who drafted the September 13, 2010 letter) dated March 25, 2010, stated that "the bottom line is that the contract does not provide for a transportation agreement… A return trip and shipment of household goods are not part of these entitlements." Def. App. 227.

Stephan argues that the March 25 Paulson email is irrelevant because it states "a return trip *and* shipment of household goods" (emphasis added) are not provided for. He seems to believe that the statement means that *both* benefits were not provided, but that return transportation was. This point is contradicted by the previous sentence quoted, which addresses transportation only ("the contract does not provide for a transportation agreement") and the previous statements from CSC. Thus, the Court cannot accept Stephan's interpretation.

In sum, the Court finds that the September 13, 2010 letter fails to support Stephan's entitlement to return transportation. The first and most obvious reason is that it is directly contradictory to three prior statements from CSC. The second reason, slightly less apparent from the face of the documents, is that all three statements against return transportation are dated *during* Stephan's employment while the September 13 letter was written six months after he left CSC's employ. Given the contemporaneous nature of the first three letters, the Court finds that CSC did not intend during the term of his employment to provide Stephan with return transportation. Any statement made after the termination of his employment is irrelevant to the entitlements Stephan held during his employment.

## b. The SOFA

The next basis Stephan asserts for an entitlement to return transportation is the SOFA itself. As the Court understands his position, the SOFA is raised both in support of the September 13 letter and also as an independent basis for recovery. The relevant language in the SOFA states:

> If the status of any person brought into Japan under paragraph 1 of this Article is altered so that he would no longer be entitled to such admission, the United States authorities shall notify the Japanese authorities and shall, if such person be required by the Japanese authorities to leave Japan, assure that transportation from Japan will be provided within a reasonable time at no cost to the Government of Japan.

Def. App. 117.  Stephan believes that this provision requires that he be provided return transportation to the United States, but the Government disagrees.

The Court does not believe this provision meets the return transportation requirements contained in the DSSR.  First, it does not appear to be mandatory— transportation appears to be contingent upon Japan requiring the person to be deported. Nobody has provided the Court with the relevant Japanese law, but this contingency seems to belie Stephan's argument that his return transport was a condition of his *employment*; rather, it appears to be conditioned upon the actions of the Japanese government after a status change.  The provision is also silent on the topic of to *where* transportation must be provided.  The DSSR requires "return transportation," not just transportation.

Finally, the SOFA does not say *who* must pay for the transportation.  Instead, it only requires the Government to assure that the person in question leaves Japan.  In this Court's view, it is entirely feasible that the Government would require its employee, an employee of its contractor, or anyone else who falls under the provision to pay for the trip himself.  The provision, then, appears to leave room for Stephan to be made to pay for his return transportation himself.

In conclusion, to this Court's reading, the SOFA does not place any requirements upon the Government or CSC to provide Stephan a return trip to his home after his employment ends.  Thus, the SOFA does not help Stephan meet his burden of demonstrating that his employment with CSC was "under conditions which provided for his/her return transportation to the United States."

**IV.     Conclusion**

As discussed above, Stephan has failed to prove that he was employed under conditions which provided for his return trip to the United States after his employment with CSC ended.  He has, therefore, failed to establish all the elements necessary to demonstrate an entitlement to LQA.  His motion for summary judgment is therefore DENIED and the Government's cross-motion is GRANTED.  The Clerk is directed to mark the case closed and enter judgment accordingly.

As a final note, even though it has found against him, the Court would like to commend Mr. Stephan on his work during this case.  Even though he was acting *pro se*, the Court found his briefing coherent, well-written, and generally well-thought out. Despite not receiving the remedy he sought, Mr. Stephan should be commended for the way in which he prosecuted his case.

/s Edward J. Damich
EDWARD J. DAMICH
Senior Judge